Silva - 12/17/2008

SHEET 1 PAGE 1                                                1

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

BASSEM KANDIL and FLORA        :
KANDIL, his wife,              :   Case Number:
                               :   06CV4701 (JAG)
        Plaintiffs,            :
                               :
        v.                     :
                               :   CIVIL ACTION
POLICE OFFICER GARY            :
YURKOVIC, POLICE OFFICER       :   Deposition of:
ANTHONY MARK ABODE,            :
POLICE OFFICER WILLIAM         :   MARCIA L. SILVA
C. OELS, III, SERGEANT         :
WILLIAM OELS, CHIEF OF         :
POLICE, CITY OF NEW            :
BRUNSWICK, CITY OF NEW         :
BRUNSWICK POLICE               :
DEPARTMENT, MIDDLESEX          :
COUNTY PROSECUTOR'S            :
OFFICE, MIDDLESEX COUNTY       :
CORRECTIONAL FACILITY,         :
JOHN DOE SUPERVISING           :
OFFICERS 1-10, JOHN DOES       :
1-10, ABC CORPS. 1-10,         :
                               :
        Defendants.            :
X------------------------------X

T R A N S C R I P T of the stenographic notes of the proceedings in the above-entitled matter, as taken by and before TRACY LYNN NEILSON, License No. 30XI00202400, a Certified Court Reporter and Notary Public of the State of New Jersey, held at the offices of HOAGLAND, LONGO, MORAN, DUNST & DOUKAS, 40 Paterson Street, New Brunswick, New Jersey, on Wednesday, December 17, 2008, commencing at 10:40 in the forenoon.

PAGE 2                                                        2

A P P E A R A N C E S:

NUSBAUM, STEIN, GOLDSTEIN, BRONSTEIN & KRON
Attorneys for the Plaintiffs, Bassem Kandil
and Flora Kandil
    20 Commerce Boulevard
    Succasunna, New Jersey  07876
By: SUSAN BIELANOWSKI REED, ESQUIRE


DWYER, CONNELL & LISBONA
Attorneys for the Defendant, Police Officer
Gary Yurkovic
    100 Passaic Avenue
    Fairfield, New Jersey 07004
By: WILLIAM T. CONNELL, ESQUIRE


GOLDEN, ROTHSCHILD, SPAGNOLA, LUNDELL,
LEVITT & BOYLAN, P.C.
Attorneys for the Defendant, Police Officer
Anthony Abode, Jr.
    1011 Route 22 West, Suite 300
    P.O. Box 6981
    Bridgewater, New Jersey 08807
By: JEFFREY S. BELL, ESQUIRE


THE STONE LAW GROUP
Attorneys for the Defendant, Police Officer
William C. Oels, III
    20 Glenview Drive
    Warren, New Jersey 07059
By: MICHAEL JOHN STONE, ESQUIRE


LAWRENCE Y. BITTERMAN, ESQUIRE
Attorney for the Defendants, Police Officer
William C. Oels, III and Police Officer
Gary Yurkovic regarding punitive damages
    247 Livingston Avenue
    New Brunswick, New Jersey 08901

PAGE 3                                                        3

A P P E A R A N C E S (continued):


HOAGLAND, LONGO, MORAN, DUNST, & DOUKAS, LLP
Attorneys for the Defendants, Sergeant William Oels,
Chief of Police, City of New Brunswick, City of New
Brunswick Police Department
    40 Paterson Street
    P.O. Box 480
    New Brunswick, New Jersey  08903
By: SUSAN K. O'CONNOR, ESQUIRE


BENJAMIN D. LEIBOWITZ, ESQUIRE
DEPUTY COUNTY COUNSEL, COUNTY OF MIDDLESEX
Attorneys for the Defendant, Middlesex County
Prosecutor's Office
    County Administration Building
    John F. Kennedy Square - Room 230
    New Brunswick, New Jersey 08901

PAGE 4                                                        4

I N D E X   O F   W I T N E S S E S

| WITNESS | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| MARCIA L. SILVA | | | | |
| By Ms. O'Connor | 6, 58 | | 110 | |
| By Mr. Bitterman | | 57 | | |
| By Ms. Reed | | 66 | 111 | |
| By Mr. Connell | | 93 | | |
| By Mr. Bell | | 110 | | |

*      *      *

Silva - 12/17/2008

SHEET 5 PAGE 17

M. Silva - direct - Ms. O'Connor   17

1  name of Pam, a female by the name of Lindsey; I
2  believe that there was a recorded conversation with
3  one of those women, I don't recall which one; and
4  there may have been some statements or some
5  information from other witnesses other than those
6  two girls, but I remember the two females.
7      Q   After court on September 22nd, 2005,
8  did you review your file to determine whether or not
9  you had received that discovery from Defense Counsel
10 prior to September 22nd, 2005?
11 A   Meaning did I look in the file to see if it
12 was already in there?
13     Q   Correct.
14 A   I don't recall doing that, no.
15     Q   Okay. Was this discovery new that was
16 handed to you on September 22nd, 2005?
17 A   Yes, I believe so.
18     Q   Once you received that discovery on
19 September 22nd, 2005, and had the opportunity to
20 review it, did you have any conversations with
21 anyone from the Middlesex County Prosecutor's Office
22 concerning that discovery?
23 A   Yes.
24     Q   Who did you have conversations with?
25 A   Ron Abramowitz.

PAGE 18

M. Silva - direct - Ms. O'Connor   18

1      Q   And can you tell me when you spoke with
2  Mr. Abramowitz concerning that discovery?
3  A   September 22nd -- September 27th of 2005.
4      Q   Okay.
5  A   Five days later.
6      Q   And what was your purpose for going to
7  see Assistant Prosecutor Abramowitz on September
8  27th, 2005?.
9  A   I had a chance to review the file. I had
10 seen Assistant Prosecutor Pitchford's notes in
11 there, I had seen that there was some requests or
12 some discussion or some issue about these two female
13 witnesses being there, I had seen that there were
14 conversations with the officers regarding this, and
15 I now had discovery which seemed to indicate, from
16 Defense Counsel, that one of these girls may have
17 been there or not been there.
18     And my question -- my issue in going to Ron
19 was that because of his position in our office of
20 dealing with "special" prosecutions or special -- or
21 anything involving IA or anything of that nature,
22 and there was some reference in here to an IA that
23 may or may not have been filed, I went to talk to
24 Ron about this discovery and to discuss it with him,
25 is there an issue here, is this a concern.

PAGE 19

M. Silva - direct - Ms. O'Connor   19

1      Q   And did you provide Mr. Abramowitz with
2  the discovery?
3  A   I don't know if I actually handed it to him
4  or if I, as we often do, stood next to his desk,
5  opened it up and flipped through and showed him
6  where I was referring to or what I thought was
7  important in it.
8      Q   As a result of that discussion with
9  Mr. Abramowitz, did he direct you to do anything?
10 A   I don't recall if he directed me to do it. I
11 called the officer, one of the officers, but I don't
12 know if that was at the direction of Ron, or if it
13 was...
14     It may have been.
15     Q   Did Mr. Abramowitz tell you anything
16 after he reviewed the discovery with you?
17 A   He said there doesn't seem to be a problem
18 here, continue on with the case, or something to
19 that effect.
20     Q   Okay. When is the next time that you
21 had to appear in court?
22 A   October 18th of 2005.
23     Q   Prior to that time, did you speak with
24 anyone else in the Prosecutor's -- strike that.
25     Between September 22nd, 2005, when you

PAGE 20

M. Silva - direct - Ms. O'Connor   20

1  first received this information, and October 18,
2  2005, when you next had to appear in court, did you
3  speak with anyone else in the Prosecutor's Office
4  other than Mr. Abramowitz relative to this new
5  discovery?
6  A   I don't believe so.
7      Q   Okay. Did you speak with the officer
8  between September 22nd, 2005, and October 18, 2005?
9  A   Yes, I did.
10     Q   What officer did you speak with?
11 A   Officer Yurkovic.
12     Q   And did you learn any information from
13 Officer Yurkovic which gave you pause in terms of
14 determining whether there was a problem with this
15 case?
16 A   No.
17     Q   Now, on October 18th, 2005, you again
18 appeared before Judge Gelade?
19 A   No.
20     Q   Who did you appear before on October
21 18th, 2005?
22 A   Judge DeVesa.
23     Q   So although you were still assigned to
24 Judge Gelade's trial team, you appeared before Ju[dge]
25 DeVesa on this case?

VARHLEY ASSOCIATES  (732) 246-4334

Silva - 12/17/2008

SHEET 11 PAGE 41

M. Silva - direct - Ms. O'Connor    41

1   Q   Okay. And tell me the nature, please,
2   of that discussion.
3   A   I needed Julie's permission to basically --
4   well, for many reasons, but, number one, because it
5   was a second degree, and, number two, because the
6   program had rejected her -- him, and I needed her
7   permission to override it.
8       So I went to Julie, and I spoke to her about
9   the case, told her the facts, told her the discovery
10  that I had been given by the defense about this
11  issue of the two girls and were they there and
12  weren't they there and that kind of thing, about the
13  co-defendant being in PTI. I told her that the
14  victims were okay with PTI. And I told her about
15  the release that the defendant was going to execute.
16  Q   And did you tell her that the release
17  dismissal agreement was Judge DeVesa's idea?
18  A   I don't recall if I told her that.
19  Q   Okay. Did you tell her that the
20  defendant, the criminal defendant, had indicated
21  acquiescence with Judge DeVesa's recommendations?
22  A   Well, of course, 'cause that's why I was
23  there with it.
24  Q   Okay. And did Julia McClure provide
25  you with the authority to have Mr. Kandil enter the

PAGE 42

M. Silva - direct - Ms. O'Connor    42

1   PTI program?
2   A   Yes.
3   Q   Your next conference was to occur on
4   November 9th?
5   A   I believe it was originally scheduled for
6   November 18th, but it was pushed up.
7   Q   And do you know why it was pushed up?
8   A   I have no idea. I don't recall.
9   Q   Okay. Did you have any discussions
10  with anyone outside the Middlesex County
11  Prosecutor's Office after your discussion with
12  Ms. McClure concerning the PTI application?
13  A   I'm sorry?
14  Q   Did you have any discussions with
15  anyone else outside of the Middlesex County
16  Prosecutor's Office after you talked with Julie?
17  A   No. And just to go - I'm sorry - just to go
18  back, it was scheduled for November 9th because the
19  parties weren't available on the 18th. So that's
20  why it was moved up.
21  Q   Okay. And you referred to --
22  A   Yeah, I referred to the transcript of October
23  18th.
24  Q   Okay. Did you have any discussions
25  with Chambers, Judge DeVesa's Chambers, before

PAGE 43

M. Silva - direct - Ms. O'Connor    43

1   November 9th, 2005?
2   A   Yes, Terrie Beckasee [phonetic spelling],
3   who's the judge's team leader, called me November
4   7th or 8th or somewhere around there to ask me if --
5   what was going on with the PTI, were we gonna let
6   him in.
7       I said yes, we were, I had gotten Julie's
8   approval.
9       She said can you have your office do the
10  paperwork and bring it over with you on the 9th so
11  we can enroll him on that date, and I said yes.
12  Q   And then did you direct someone in your
13  office to perform the paperwork that was necessary
14  for the resolution of this criminal matter?
15  A   Yes, Barbara Kelly.
16  Q   Okay. And she's a secretary in your
17  office?
18  A   She was a clerk at the time. She doesn't
19  work there anymore.
20      MS. O'CONNOR: DMS-3, please.
21      (Exhibit DMS-3, Order of
22  Postponement for PTI and Conditions of PTI,
23  two pages, marked for identification.)
24  Q   Ms. Silva, I am going to show you a
25  two-page document, which, of course, is not stapled,

PAGE 44

M. Silva - direct - Ms. O'Connor    44

1   marked DMS-3 and ask if you could identify that for
2   us, please.
3   A   Yes, the first page -- well, I believe the
4   whole thing isn't -- well, I don't know if the whole
5   thing is supposed to be together, but the first page
6   is an Order of Postponement for PTI, and the second
7   page is Conditions of PTI, supervision, standard
8   conditions.
9   Q   The first page of that document, is
10  that what you had Ms. Kelly of your office prepare
11  in preparation for the November 9th, 2005
12  conference?
13  A   Yes.
14  Q   Okay. And as part of that document,
15  under Comments, it indicates, "Defendant to execute
16  a hold harmless agreement against all officers
17  involved, City of New Brunswick, and MCPO," correct?
18  A   That's correct.
19  Q   Okay. And that would have then been a
20  condition of PTI, correct?
21  A   That's correct.
22  Q   Okay. Is there anywhere on that form,
23  other than of course the comment section, where you
24  could put in as a condition of PTI the requirement
25  to have a hold harmless agreement?

Silva - 12/17/2008

SHEET 29   PAGE 113

M. Silva - redirect - Ms. Reed    113

1  Mr. Kobin, or not?
2       Are you asking her whether or not
3  you ever used that term, release and hold
4  harmless agreement, period?
5       MS. REED: No, because she's
6  already testified regarding that.
7  Q  Can you answer the question as asked?
8       MR. LEIBOWITZ: Object to the
9  form.
10 A  You used those words with regards to talking
11 to Mr. Kobin.
12 Q  Thank you.
13      MS. REED: That's all I have.
14      (Deposition adjourned at 12:39 p.m.)
15      (Exhibits retained by Counsel.)
16
17
18
19
20
21
22
23
24
25

PAGE 114

114

C E R T I F I C A T E   O F   O F F I C E R

I, TRACY LYNN NEILSON, a Certified Court Reporter and Notary Public of the State of New Jersey, do hereby certify that prior to the commencement of the examination the witness was duly sworn by me.

I DO FURTHER CERTIFY that the foregoing is a true and accurate transcription of the testimony as taken stenographically by and before me on the date, time, and place aforementioned.

I DO FURTHER CERTIFY that I am neither a relative, employee, attorney, nor counsel to any parties involved; that I am neither related to nor employed by any such attorney or counsel; and that I am not financially interested in the outcome of this action.

*Tracy L. Neilson*

TRACY LYNN NEILSON, C.S.R., C.R.R.
A NOTARY PUBLIC OF THE STATE OF NEW JERSEY
C.S.R. License No. 30XI00202400
C.R.R. License No. 30XR00011000

VARHLEY ASSOCIATES   (732) 246-4334