NUSBAUM, STEIN, GOLDSTEIN
BRONSTEIN & KRON, P.A.
20 Commerce Blvd., Suite E
Succasunna, New Jersey 07876
(973)584-1400
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

BASSEM KANDIL AND FLORA
KANDIL, his spouse,
        Plaintiff(s)
    v.

Civil Action No. 06-cv-4701

POLICE OFFICER GARY
YURKOVIC, POLICE OFFICER
ANTHONY MARK ABODE, et al.
        Defendant(s)

**PLAINTIFF'S REPLY TO DEFENDANTS' STATEMENT OF FACTS**

ALL EXHIBITS REFERRED TO HEREIN ARE ATTACHED TO THE CERTIFICATION OF WILLIAM T. CONNELL, ESQ. UNLESS OTHERWISE SPECIFICALLY NOTED.

1. Admitted as to the arrest and the charges against Plaintiff Bassem Kandil. Denied as to the substance of the report of Police Officer Gary Yurkovic and further denied as to the materiality and relevancy of the substance of the report of Police Officer Yurkovic - Ex. "V".

2. Admitted that other officers were present at the time of Plaintiff's arrest. Depositions of the various police officers involved in this matter have not been conducted pursuant to the agreed upon delay in certain discovery pending the Court's ruling on the Motion relating to the Release/Hold Harmless Agreement. Plaintiff denies the materiality at this stage of the investigative reports prepared by Office Robert Hanson - Ex. "A", and objects to the materiality and relevancy of Ex. "X", the supplemental investigative report of Anthony Abode.

3. Admitted as to the fact that these reports were prepared and provided in discovery during the course of the criminal case as well as the civil case. Denied as to the materiality and relevancy of the Use of Force Reports of Officers Yurkovic and Oels - Ex. "YY" and "ZZ".

4. Admitted that a Warrant Complaint was prepared and served upon the Plaintiff and as set-forth in the Statement of Undisputed Material Facts of Defendants, charged the Plaintiff with Resisting Arrest in violation of N.J.S.A. 2C:29-2(a); Aggravated Assault on a Police Officer in violation of N.J.S.A. 2C:12-18; and, Disarming a Police Officer in violation of N.J.S.A. 2C:12-11.

5. Admitted; however, the Plaintiff denies the materiality and relevancy of this assertion. Furthermore, the Plaintiff takes issue with any consideration being given to the "finding of probable cause" for the issuance of the Warrant Complaint. This is irrelevant and immaterial as to the Release/Hold Harmless Agreement.

6. Admitted as to the fact of the issuance of the Summons Complaint; however, this fact again, is totally irrelevant and immaterial as to the Release/Hold Harmless Agreement.

7. It is not possible to respond to the comment, "case-specific Internal Affairs Investigation". Admitted that there was an investigation into an allegation that the Plaintiff was a subject of a bias crime. Again, the Plaintiff denies the relevancy and materiality of the Internal Affairs Investigation regarding a bias crime.

8. Admitted; however, immaterial and irrelevant.

9. Admitted in that there was an interview of the Plaintiff. There is suggestion in paragraph 9. that the Plaintiff himself, made an allegation regarding violation of a bias

statute and that during the interview he "conceded" that no racial slurs were used. The allegation set-forth in Ex. "AAA" are the allegations that the Plaintiff has maintained since his arrest regarding wrongful arrest and excessive force. The Plaintiff never made an allegation with respect to a bias statute or the use of ethnic slurs with respect to the Plaintiff. Denied that the information contained in this paragraph is relevant or material.

10. Admitted.

11. Admitted.

12. Admitted.

13. Admitted.

14. Admitted.

15. Admitted.

16. Admitted.

17. Admitted that there was an Internal Affairs investigation into the allegation made by the Plaintiff of excessive force. Denied as to the characterization of a "lengthy investigation" and denied as to the materiality and relevancy of the exoneration of wrongdoing of the police officers involved in the New Brunswick Police Department. Plaintiff denies the relevancy and materiality of the Internal Affairs investigative report dated June 15, 2005 prepared by Sgt. Richard Rowe relative to case #04-071- Ex. "CC".

18. Admitted.

19. Admitted.

20. Admitted.

21. Admitted.

22. Admitted that Marcia Silva testified that Judge DeVesa first brought up the topic of a civil lawsuit and Release/Hold Harmless Agreement. Denied as to relevancy and materiality with respect to the validity of the Release/Hold Harmless Agreement.

23. Admitted that this was the testimony of A.P. Silva.

24. Admitted.

25. Admitted.

26. Admitted.

27. Admitted.

28. Admitted.

29. Admitted.

30. Admitted as to the reasons set-forth by the Criminal Manager in denying Plaintiff's admission to PTI. Denied as to the materiality and relevancy of the reasons set-forth by the Criminal Manager and relevancy of Ex. "II".

31. Admitted.

32. Admitted as to Deputy First Asst. Prosecutor McClure's testimony and the content of the Affidavit.

33. Admitted as to Deputy First Asst. Prosecutor McClure's testimony and the content of the Affidavit.

34. Admitted as to Deputy First Asst. Prosecutor McClure's testimony and the content of the Affidavit.

35. Admitted as to Deputy First Asst. Prosecutor McClure's testimony and the content of the Affidavit. Denied as to the consideration of the expenditure of additional time and resources in the criminal prosecution being relevant and material to the issue of the Release/Hold Harmless Agreement.

36. Admitted as to the substance of the testimony of Asst. Prosecutor Silva.

37. Admitted that a letter was authored by Asst. Prosecutor Silva which set-forth the condition of the Hold Harmless Agreement. As set-forth, the letter is dated November 9, 2005.

38. Admitted. The PTI enrollment occurred on the same day as the letter of November 9th set-forth in the preceding paragraph.

39. Admitted but for the suggestion that the Court was somehow concerned with respect to the execution of the Hold Harmless Agreement other than the execution of the Hold Harmless Agreement being placed into the PTI Order as a condition by the Prosecutor's Office.

40. Admitted that between 10/18/05 and 11/9/05 the Plaintiff "contemplated" his admission into PTI although it is not clear what is meant by the word "contemplated". The actual testimony is that Plaintiff had a few weeks to think about his admission into PTI between 10/18/05 and 11/9/05.

41.     Admitted as to there being some mention of a waiver of civil rights on 10/18/05 and that Ms. Reed mentioned to Mr. Kandil that the issue of a Release/Hold Harmless Agreement had been brought up. Denied as to "contemplation" and "discussion".

42.     Admitted.

43.     Admitted as to a discussion taking place prior to execution of the PTI Order on 11/9/05 and the appearance before Judge DeVesa. Denied that Plaintiff understood he would be giving up his right to bring a civil suit. The testimony set-forth in Ex. "LL" and "NN" is that the Plaintiff understood that by agreeing to the Release/Hold Harmless Agreement the Release/Hold Harmless Agreement would be an issue in a Federal Court Civil Rights lawsuit and that the Federal Court would decide the validity of the Release/Hold Harmless Agreement. The testimony is that the matter would be pursued in Federal Court and that the Federal court would decide the validity of the Release/Hold Harmless Agreement. Ex. "LL" - T.423:1- T473:8.

44.     Denied. The Release/Hold Harmless Agreement does not state that a suit will not be brought. The conditions of the PTI Order does not state that a suit cannot be filed. Ex. "UU" and Ex. "RR".

45.     Admitted as to what the transcript states.

46.     Denied as to "representations". The condition of PTI was to execute a Release/Hold Harmless Agreement. The condition did not state that a civil suit would not be brought. The fact that the Judge added "agreeing, presumably, not to bring any civil action against them…" did not add to the PTI condition. Ex. "RR" Denied as to the citation to Ex. "NN" in relation to the appearance in court on 11/9/05. The testimony with respect to filing in Federal Court was with respect to October of 2005 and was in contrast to filing in State Court.

47.     Admitted that Plaintiff was present in court on 11/9/05. Denied that there was ever an agreement not to bring a suit despite the Judge's "presumption". The agreement was to execute a Release/Hold Harmless Agreement which was done. Ex. "UU".

48.     Admitted as to what the transcript says and that the Plaintiff was questioned.

49.     Admitted.

50.     Admitted.

51.     Admitted.

52.     Admitted.

53.     Denied. It is not clear what "representations" the defense means. There were apparently other reasons for the admission into PTI. Ex. "BBB".

54.     Admitted.

55.     Admitted.

56.     Admitted.

57.     Denied. A Release/Hold Harmless Agreement was prepared. The Release/Hold Harmless Agreement is what this motion is about. Denied as to "intended to violate Judge DeVesa's Order of Postponement. The testimony was that the deponent was not sure what he would do about the condition of the Release/Hold Harmless Agreement. The testimony set-forth in Ex. "NN" is that the deponent was not sure about what action should be taken with respect to the condition of the Release/Hold Harmless Agreement. The testimony is that three options were contemplated. Ex. "J" – entire Vol. 2 of the transcript of the deposition of Robert D. Kobin, Esq. attached to Certification of Robert D. Kobin - T.184:9-T.187:23. The undisputed fact is that a Release/Hold Harmless Agreement was executed.

58.     Denied. It is admitted that a Release/Hold Harmless Agreement was drafted and executed.

59.     Admitted that Mr. Kobin would have spoken to A.P. Silva. Denied that Mr. Kobin stated he was writing a brief for Federal Court in that Ms. Reed was responsible for brief writing. Ex. "J" - T.156:17-T.157:22.

60.     Denied.

61.     Admitted.

62.     Admitted.

63.     Admitted.

64.     Admitted.

65.     Admitted.

66.     Admitted but for the "waiver of his civil claim" language. The agreement was for a Release/Hold Harmless Agreement.

67.     Admitted but for the language, "waive his civil suit"

68.     Denied that there was a breach of the Order of Postponement. By definition there was no breach of the Order of Postponement. A Release/Hold Harmless

Agreement was executed. Admitted that the prosecutor may have become aware that a Release/Hold Harmless Agreement had not been executed as of January/February of 2007.

69. Admitted.

70. Denied as to "no intention to prepare Release/Hold Harmless Agreement". This cannot possibly be an undisputed fact. A Release/Hold Harmless Agreement was drafted and executed. The cited testimony refers to not executing the Release/Hold Harmless Agreement as an option. The deponent also testified that he had grave concerns about the validity of such a Release and contemplated several options. Ex. "J" - Vol. 2 of deposition transcript of Robert D. Kobin, Esq. attached to Certification of Robert D. Kobin - T.187:12-T.204:5.

71. Admitted.

72. Denied. The client decided to execute the Release/Hold Harmless Agreement. Ex. "J"- Vol. 2 of deposition transcript of Robert D. Kobin, Esq. - T.98:14-T.99-12; Ex. "H" – Affidavit of Bassem Kandil attached to Certification of Robert D. Kobin.

73. Admitted.

74. Admitted.

75. Admitted.

76. Admitted.

77. Admitted.

78. Admitted.

79. Admitted.

80. Admitted.

81. Admitted.

82. Admitted.

83. Admitted.