# Dwyer Connell & Lisbona
### C O U N S E L L O R S    A T    L A W

RAYMOND C. CONNELL
(1934-1974)
EDMOND J. DWYER, JR.
(1962-2006)
RAYMOND R. CONNELL ♦
ALBERT C. LISBONA ♦
WILLIAM T. CONNELL ♦◊
DONALD T. OKNER ♦∞
CHARLES B. CAREY ♦
DONALD S. DE DIO ♦
JAMES R. CONNELL
STEVEN J. BATTA •
JOHN J. GROSSI, III ♦

100 PASSAIC AVENUE – FAIRFIELD, NJ 07004
(973) 276-1800 -- FAX (973) 276-1888
E-MAIL: INFO@DCLLAW.COM
WEBSITE: www.DCLLAW.COM
MAILING ADDRESS:
P.O. BOX 629
WEST CALDWELL, NJ 07007-0629
I.D. 22-2106499

BETH CONNELL O'CONNOR
LYNN A. LISBONA
LAUREN B. CONNELL

of counsel
DANIEL L. MARTIN •
KENNETH G. CAMPEN
KAREN L. ZDANIS •

◊ Member of NJ and DC Bars
∞ Member of NJ and CO Bars
• Member of NJ and NY Bars
♦ Certified by the Supreme Court of
New Jersey as a Civil Trial Attorney

WRITER'S E-MAIL:  WCONNELL@DCLLAW.COM

February 1, 2010

The Honorable Joseph A. Greenaway, Jr., U.S.D.J.
United States District Court
Martin Luther King Federal Courthouse & Building
50 Walnut Street
Newark, New Jersey  07102

>      Re:   BASSEM KANDIL, ET AL. v. Yurkovic, et al.
>            Civil Action Number:  06-4701 (JAG-MCA)
>            Our File Number:  4-5900.039498

Dear Judge Greenaway:

Please be advised that I represent Defendant Police Officer Gary Yurkovic in the aforementioned matter.  Susan K. O'Connor, Esq. represents Defendants City of New Brunswick, City of New Brunswick Police Department, Police Director and Sergeant William Oels, Jr. Michael John Stone, Esq. represents Defendant Officer William C. Oels, III.  Gary S. Spagnola, Esq. represents Defendant Officer Anthony Mark Abode.   Kindly   accept   this   correspondence   on   behalf   of   the aforementioned Defendants (hereinafter "Defendants") in response to Plaintiffs' Opposition (See Document Number 101) to Defendants' pending Motions for Summary Judgment (See Document Numbers 81 through 84).   This Reply Brief is being filed in accordance with the Order dated January 15, 2010 signed by the Honorable Madeline Cox Arleo, U.S.M.J. (See Document Number 105).

As noted in the Moving Briefs and Plaintiffs' Opposition, the Supreme Court has opined that Release/Dismissal Agreements may be enforced where (1) they are found to have been voluntarily entered into, (2) there has been no prosecutorial misconduct and (3) where the

The Honorable Joseph A. Greenaway, Jr., U.S.D.J.                    Page 2
RE: Kandil v. Yurkovic et al.                                  February 1, 2010

agreement is found to be in the public interest. <u>Newton v. Rumery</u>, 480
U.S. 386, 394 (1987). Plaintiffs concede that the first element of
<u>Rumery</u>, concerning the issue of voluntariness, has been satisfied.
(See Opp. at p. 6.) Plaintiffs have failed to address the second
element, regarding prosecutorial misconduct, and therefore have waived
any argument in this regard. Therefore, the remaining issue is the
third element, which is whether the agreement is found to be in the
public interest. This is an issue to be decided by Your Honor. <u>Berry
v. Peterson</u>, 887 F.2d 635, 637 (5th Cir. 1989); <u>Livingstone v. North
Belle Vernon Borough</u>, 12 F.3d 1205, 1215 (3d Cir. 1993).

Plaintiffs' Opposition to the public interest requirement centers
on two (2) Ethic Opinions issued by the New Jersey Advisory Committee
on Professional Ethics. (See Exhibit K and Exhibit L attached to
Plaintiffs' Opposition.) It must be noted from the onset that the
second Opinion relied on by Plaintiffs, Opinion 714, was decided on
October 27, 2008, which was after Plaintiff Bassem Kandil (hereinafter
"Mr. Kandil") and his counsel, Mr. Kobin, agreed to prepare and sign a
Release/Hold Harmless Agreement in exchange for his admission into the
Pre-Trial Intervention Program (hereinafter "PTI"). The Ethics
Opinion was issued after Mr. Kandil and his counsel made the
representations to the Honorable Frederick DeVesa, J.S.C. on November
9, 2005 regarding the execution of the Release/Hold Harmless Agreement
on November 9, 2005. (See Exhibit L attached to Plaintiffs'
Opposition.) Mr. Kandil ultimately executed the Release/Hold Harmless
Agreement on March 20, 2007, again prior to the issuance of Opinion
714. In short, Opinion 714 was a post hoc change to the legal rules
which the parties had the right to rely upon in making their decisions
in 2005. As Ethics Opinion 714 does not apply retroactively,
Defendants' conduct cannot be judged by an Ethics Opinion that was
issued subsequent to the conduct at issue. Therefore, any and all
references to Opinion 714 must be disregarded.

At the time the discussions took place regarding the execution of
the Release/Hold Harmless Agreement, the only Ethics Opinion in effect
was Opinion 661. However, this Opinion addresses the limited issue of
the ability of a **municipal** prosecutor to require a criminal defendant
to make certain admissions in a case where probable cause may not
exist. Further, Opinion 661 specifically notes that the prosecutor
"**demanded**" that defendant admit to probable cause, lack of excessive
force and a waiver of a Civil Rights lawsuit.

In this matter, probable cause is not in question because the
Grand Jury indicted Mr. Kandil. The Middlesex County Grand Jury
returned Indictment 04-12-1694 against Mr. Kandil charging him with one
(1) count of disarming Police Officer Yurkovic, in violation of

The Honorable Joseph A. Greenaway, Jr., U.S.D.J.                    Page 3
RE: Kandil v. Yurkovic et al.                                     February 1, 2010

N.J.S.A. 2C:12-11, a second degree crime, two (2) counts of aggravated assault on Officer Yurkovic and Officer Oels, respectively, in violation of N.J.S.A. 2C:12-1(b)(5), third degree crimes, and two (2) counts of resisting arrest as to Officer Yurkovic and Officer Oels, respectively, in violation of N.J.S.A. 2C:29-2(a)(3), third degree crimes. (See Exhibit AA, attached to Defendants' Motions for Summary Judgment, a copy of Indictment Number 04-12-01694 relative to State v. Kandil.) The return of an indictment establishes probable cause as a matter of law. State v. Overbeck, 618 F.Supp. 196, 198 (D.N.J. 1985); U.S. v. Romano, 706 F.2d 370, 374 (2d Cir. 1983); U.S. v. Ciambrone, 601 F.2d 616, 622 (1979); see also Rose v. Bartle, 871 F.2d 331, 353 (3d Cir. 1989)("a grand jury indictment or presentment constitutes prima facie evidence of probable cause to prosecute...")

Second, the charges filed against Mr. Kandil were being prosecuted by a County Prosecutor, not a municipal prosecutor. It was not the Prosecutor's Office which requested or demanded the execution of a Release/Hold Harmless Agreement, but the Court. Further, the element of intimidation or coercion that can arise when a prosecutor is negotiating a plea bargain with a criminal defendant was not present. See Opinion 661.

As will be set forth in detail infra, there was a public interest in the plea bargain negotiated in this matter, which benefited both parties. On December 17, 2004, Mr. Kandil appeared at a pre-arraignment conference and was provided with discovery and a written plea offer from the Middlesex County Prosecutor's Office of non-custodial probation. (See Exhibit BB, attached to Defendants' Motions for Summary Judgment, a copy of the correspondence dated December 17, 2004 from Sheree V. Pitchford, Assistant Middlesex County Prosecutor and Exhibit EE, attached to Defendants' Motions for Summary Judgment, a copy of the relevant pages of the deposition transcript of Sheree V. Pitchford, T17:6-18:5.) On January 20, 2005, nearly six (6) weeks after he received the plea offer, Mr. Kandil was arraigned on the Indictment in the presence of counsel. (See Exhibit DD, attached to Defendants' Motions for Summary Judgment, a copy of the Arraignment/Status Conference Order dated January 20, 2005 and Exhibit EE, attached to Defendants' Motions for Summary Judgment, T20:19-21:3.) Mr. Kandil and his counsel engaged in discovery with the Prosecutor's Office which was discussed at two (2) conferences on July 14, 2005 and August 4, 2005 before the Honorable Melvin L. Gelade, J.S.C. (See Exhibit 1, attached hereto, a copy of the relevant pages of the deposition transcript of Sheree Pitchford, T29:11-17, T32:2-22.)

The Honorable Joseph A. Greenaway, Jr., U.S.D.J.                          Page 4
RE: Kandil v. Yurkovic et al.                                            February 1, 2010

        Thereafter, on September 22, 2005, Mr. Kobin provided reciprocal
discovery concerning the motive of Officer Yurkovic to arrest Mr.
Kandil. (See Exhibit 2, attached hereto, a copy of the relevant pages
of the deposition transcript of Marcia Silva, T13:22-25, T15:18-21.)
Assistant Prosecutor Silva reviewed the reciprocal discovery and
discussed same with Executive First Assistant Prosecutor Ronald
Abramowitz. (See Exhibit 2, attached hereto, T18:1-3.) Prosecutor
Abramowitz reviewed the discovery and did not see a problem which
would impact the prosecution of this matter. (See Exhibit 2, attached
hereto, T19:15-19.) Nevertheless, Prosecutor Abramowitz instructed
Ms. Silva to investigate the allegations contained in the discovery
provided by Mr. Kobin. (See Exhibit 2, T19:8-14.) Ms. Silva further
investigated the allegations contained in Mr. Kandil's reciprocal
discovery and determined that there was no improper motive by Officer
Yurkovic and that the claim by Mr. Kandil's counsel was unfounded.
(See Exhibit 2, T20:12-16.)

        At the time of the next status conference on October 18, 2005,
the Honorable Frederick J. DeVesa, J.S.C, Presiding Judge of the
Criminal Division, inquired as to the status to which counsel for Mr.
Kandil replied:

        [a]t this point, Your Honor, I think it would be helpful and I
        have discussed this with the Prosecutor, to keep the last plea
        offer open now that discovery seems to be completed, set up a
        motion schedule, a pretrial motion schedule and then set a trial
        date for this matter.

(See Exhibit XX, attached to Defendants' Motions for Summary Judgment,
T2:17-21.) This exchange with Judge DeVesa directly contradicts
Plaintiffs' assertion, in the opposition papers, that Mr. Kandil's
only choice was either to accept PTI or proceed to trial. Clearly,
the offer of non-custodial probation was still a viable consideration
and should be considered by this Court in determining that there was
no element of intimidation or coercion similar to the factual
circumstances which gave rise to Ethics Opinion 661.

        On October 18, 2005, Judge DeVesa also inquired about the status
of plea offers.

        The Court:       The State is not agreeing to PTI for Mr. Bassem
                         [Kandil]?

        Ms. Silva:       Correct, Your Honor.

The Honorable Joseph A. Greenaway, Jr., U.S.D.J.                    Page 5
RE: Kandil v. Yurkovic et al.                              February 1, 2010

    The Court:          But the State is offering a non-custodial term of
                        probation?

    Ms. Silva:          Your Honor, that's correct.

    . . .

(See Exhibit XX, attached to Defendants' Motions for Summary Judgment,
T5:8-14.)   Clearly, at the time of the conference, the State was not
offering PTI to Mr. Kandil, which further establishes that it was not
the Prosecutor's Office who demanded the inclusion of the condition of
a Release/Hold Harmless Agreement.    Immediately after this exchange,
Judge DeVesa requested a conference in chambers.   (See Exhibit XX,
attached to Defendants' Motions for Summary Judgment, T5:22-25.)
Plaintiffs cannot and do not dispute that, at the conference, it was
the Judge who suggested that the Prosecutor's Office consider
admitting Mr. Kandil into PTI if Mr. Kandil agreed to withdraw his
civil claims.  (See Exhibit LL, attached to Defendants' Motions for
Summary Judgment, T429:14-24, Exhibit MM, attached to Defendants'
Motions for Summary Judgment, T49:10-50:20 and Exhibit OO, attached to
Defendants' Motions for Summary Judgment, T27:9-28:9, T100:9-14 and
Exhibit XX, attached to Defendants' Motions for Summary Judgment,
T6:2-20).   Again, this essential undisputed fact establishes that it
was the Court who made the suggestion, to which Mr. Kandil later
agreed.  Mr. Kandil applied for admission into PTI at the direction of
his attorney immediately following the October 18, 2005 conference.
(See Exhibit JJ, attached to Defendants' Motions for Summary Judgment,
a copy of the Application for Admission to PTI dated October 18,
2005.)

    After the Probation Department recommended that Mr. Kandil not be
accepted into the PTI Program, pursuant to the policy of the
Prosecutor's Office, Assistant Prosecutor Silva consulted with First
Assistant Prosecutor Julia McClure to determine whether the
Prosecutor's Office would override the Probation Department's
recommendation.  (See Exhibit BBB, attached to Defendants' Motion for
Summary Judgment, Affidavit executed by First Assistant Prosecutor
Julia McClure.)   First Assistant Prosecutor McClure approved Mr.
Kandil's admission into PTI and authorized Assistant Prosecutor Silva
to communicate same to the Court and counsel for Mr. Kandil.  (See
Exhibit BBB, attached to Defendants' Motion for Summary Judgment.)   In
this instance, it is undisputed that the Middlesex County Prosecutor's
Office had not previously conditioned an entry into PTI with a
requirement that the criminal defendant execute a Release/Hold
Harmless Agreement.  It is also undisputed that the Middlesex County
Prosecutor's Office had no policy which required a criminal defendant

to execute a Release/Hold Harmless Agreement prior to entry into PTI.
As such, Ms. McClure's review of the request on behalf of Mr. Kandil
was a unique consideration of all the factors pertinent to the
prosecution of Mr. Kandil and the public policy issues associated with
representing the People of the State of New Jersey, including the
public interest favoring plea bargains, upholding the Constitution and
State laws, and achieving a measure of justice.

On October 18, 2005, Mr. Kobin's associate, Susan Reed, Esq.,
explained the PTI Program to Mr. Kandil, explained that, as a
condition of his admission to the PTI Program, he had to give up his
civil rights to sue the Officers and advised him to speak further with
Mr. Kobin.  (See Exhibit 3, attached hereto, a copy of the relevant
pages of the deposition transcript of Robert Kobin, Esq., T66:3-20 and
Exhibit MM, attached to Defendants' Motions for Summary Judgment, a
copy of the relevant pages of the deposition transcript of Susan Reed,
Esq., T61:22-62:8, T63:17-23).  Thereafter, prior to November 9, 2005,
Mr. Kobin explained to Mr. Kandil the conditions of his admission into
the PTI Program, including the condition that he could not sue the
Officers involved in his arrest.  (See Exhibit LL, attached to
Defendants' Motions for Summary Judgment, T486:3-6 and Exhibit 3,
attached hereto, T66:15-23, T67:1-5, T81:7-11, T83:1-11.)  Again, the
factual circumstances in this matter clearly establish that Mr. Kandil
and his attorneys knew that the Court suggested a Release/Hold
Harmless Agreement be provided as a condition of PTI and had several
discussions, prior to the actual execution of the Order of PTI,
concerning the Court's suggestion.  These factual circumstances are
much different than those presented in Opinion 661.

When Assistant Prosecutor Silva, Mr. Kobin and Mr. Kandil
appeared before Judge DeVesa on November 9, 2005, the Court agreed to
permit Mr. Kandil to enter PTI based on the condition, among others,
that Mr. Kandil would execute a Hold Harmless Agreement, waiving all
civil claims against the City of New Brunswick, the officers from the
City of New Brunswick and the Prosecutor's Office as a result of his
arrest and prosecution.  (See Exhibit FF, attached to Defendants'
Motions for Summary Judgment, T44:4-12, Exhibit OO, attached to
Defendants' Motions for Summary Judgment, T44:14-21 and Exhibit PP,
attached to Defendants' Motions for Summary Judgment, T2:20-3:3.)  It
must be noted that Mr. Kobin is an experienced criminal attorney,
having been an Assistant Prosecutor in the Morris County Prosecutor's
Office for nine (9) years, and thereafter, a criminal defense attorney
in private practice.  (See Exhibit 3, attached hereto, T6:12-21, T7:2-
23, T20:12-22, T21:5-9.)  Prior to or during the November 9, 2005
admission into PTI, Mr. Kobin never expressed his concern to the Court
or Assistant Prosecutor Silva that his client should not enter into
PTI with one of the conditions being the execution of a Release/Hold

The Honorable Joseph A. Greenaway, Jr., U.S.D.J.                    Page 7
RE: Kandil v. Yurkovic et al.                              February 1, 2010

Harmless Agreement.   Instead of advising the Court that he contested
the   validity   of   the   condition   concerning   the   execution   of   a
Release/Hold   Harmless   Agreement,   Mr.   Kobin   falsely   represented to the
Court,   on   the   record,   that   he   agreed   to   the   conditions   and   would
provide the Court with the Release/Hold Harmless Agreement by December
2,  2005.   (See  Exhibit  PP,  attached  to  Defendants'  Motions  for  Summary
Judgment,   T5:11-6:3.)   Mr.  Kobin  testified  that  when  he  agreed  to
prepare  and  provide  the  Release/Hold  Harmless  Agreement  to  the  Court
it  was  not  a  misrepresentation  to  the  Court  even  though  it  was  not  his
intention  to  prepare  the  Release/Hold  Harmless  Agreement  and  supply  it
to   the   Court.    (See  Exhibit  NN,  T183:9-185:25.)    Further,  Mr.  Kobin
testified  that,  when  he  stated  to  the  Court  that  he  would  prepare  and
provide  the  Release/Hold  Harmless  Agreement,  he  had  three  (3)  options:
(1)  he  hoped  that  the  Release/Hold  Harmless  Agreement  would  be
forgotten  about  and  the  condition  would  be  waived;  (2)  he  could  file
an  application  to  the  Court  to  remove  that  condition;  or  (3)  to
prepare  and  provide  the  Release/Hold  Harmless  Agreement  consistent
with  his  representation  to  the  Court.   (See  Exhibit  NN,  185:9-187:9.)

Despite   Ms.   Silva's   numerous   telephone   calls   following   the
November   9,   2005   conference   to   obtain   the   document,   Mr.   Kobin
intentionally  mislead  Ms.  Silva  to  believe  that  the  document  had  been
prepared  and  submitted  when  he  had  no  such  intention.   (See  Exhibit
LL,  attached  to  Defendants'  Motions  for  Summary  Judgment,  T:452:18-25,
T453:21-25,  Exhibit  MM,  attached  to  Defendants'  Motions  for  Summary
Judgment,  T93:14-94:9,  Exhibit  NN,  attached  to  Defendants'  Motions  for
Summary  Judgment,  T:148:9-12,  T149:18-22  and  Exhibit  OO,  attached  to
Defendants'  Motions  for  Summary  Judgment,  T59:15-61:24).   It  was  not
until  sixteen  (16)  months  later  when  the  Probation  Department  made  a
Motion  to  Terminate  PTI,  due  to  Mr.  Kandil's  failure  to  comply  with
the  condition  to  provide  the  Release/Hold  Harmless  Agreement,  that  Mr.
Kobin  finally  prepared  the  Release  and  his  client  executed  same.   (See
Exhibit  FF,  attached  to  Defendants'  Motions  for  Summary  Judgment,
T72:24-73:22,   T83:11-84:14,   Exhibit   LL,   attached   to   Defendants'
Motions  for  Summary  Judgment,  T454:1-6,  Exhibit  OO,  attached  to
Defendants'  Motions  for  Summary  Judgment,  T108:2-8  and  Exhibit  SS,
attached  to  Defendants'  Motions  for  Summary  Judgment,  a  copy  of
correspondence  dated  February  7,  2007  from  the  Brian  Stevens,  Senior
Probation   Officer   for   Superior   Court   of   New   Jersey,   Probation
Division,  Hunterdon  County  to  Mr.  Kandil,  with  attached  Termination
Hearing   Notice).    If   Mr.   Kandil   had   refused   to   provide   the
Release/Hold  Harmless  Agreement,  his  PTI  would  have  been  terminated
and  the  matter  would  have  been  returned  to  the  trial  list  for

The Honorable Joseph A. Greenaway, Jr., U.S.D.J.                    Page 8
RE: Kandil v. Yurkovic et al.                                February 1, 2010

prosecution. Mr. Kobin never challenged this condition of PTI with
the trial court or the Appellate Division. Rather than challenge the
validity of the condition in State Court or withdraw his client from
PTI and allow the criminal case to be tried, Mr. Kobin finally
satisfied his November 9, 2005 representation to Judge DeVesa and
provided the executed Release/Hold Harmless Agreement.

Similarly, on November 9, 2005, Mr. Kandil knowingly and
voluntarily agreed to the conditions of his PTI admission before Judge
DeVesa. (See Exhibit LL, attached to Defendants' Motions for Summary
Judgment, T437:1-9 and Exhibit PP, attached to Defendants' Motions for
Summary Judgment, T3:3-4:3). In fact, on November 9, 2005, Mr. Kandil
intended to sign the Release/Hold Harmless Agreement. (See Exhibit
LL, attached to Defendants' Motions for Summary Judgment, T437:3-9.)
On November 9, 2005, Mr. Kandil was present when Mr. Kobin represented
to Judge DeVesa that a Release/Hold Harmless Agreement would be
prepared and executed. (See Exhibit PPP, attached to Defendants'
Motions for Summary Judgment.) Despite Mr. Kandil's representations
to the Court and his intention to execute Release/Hold Harmless
Agreement, this Civil Lawsuit was instituted. (See Exhibit LL,
T455:22-456:6.) Mr. Kandil was admitted into PTI and gained the
benefits of not being prosecuted for the charges contained in the
Indictment. Mr. Kandil only signed the Release/Hold Harmless
Agreement after the Motion to Terminate PTI was made as, if the Motion
was granted, his probation would have been terminated and he would
have had to stand trial on the charges contained in the Indictment.

As such, Opinion 661 is not applicable in determining whether
Rumery's third element has been met in this case. The facts set forth
supra clearly show that the plea negotiations were protracted, that
PTI was the result of a plea bargain initiated by the Court and that
the parties had equal bargaining power. As Your Honor is aware, there
is a public interest in plea bargaining and this plea benefited both
parties. Mr. Kandil gained all of the benefits of his bargain, which
in hindsight, reveals a calculated strategy by Mr. Kandil and his
attorney to enter PTI, avoid criminal prosecution and still proceed
with his civil lawsuit. It is fundamentally unfair to reward Mr.
Kandil and his attorney for their willful disregard of the Court's
authority and to permit those with unclean hands to manipulate the
judicial system for their own benefit. Further, it is fundamentally
unfair to permit Mr. Kandil and his attorney to rely solely upon
Ethics Opinions, which are inapplicable to the issue presented, in a
post-hoc attempt to justify their own conduct.

The Honorable Joseph A. Greenaway, Jr., U.S.D.J.                    Page 9
RE:  Kandil v. Yurkovic et al.                                February 1, 2010

As noted in complete detail in Defendants' Motions for Summary Judgment, in order for a release-dismissal agreement to be enforceable, it must be in the public interest. Rumery, 480 U.S. at 394.  The Third Circuit held that "in our recent opinion in Cain, we explained that defendants must show that the prosecutor made the decision to enter into a release-dismissal agreement out of a case-specific concern for the public interest in preserving governmental resources rather than out of concern for the private interests of governmental officials." Livingstone v. North Belle Vernon Borough, 12 F.3d 1205, 1215 (3d Cir. 1993)(citing Cain v. Darby Borough, 7 F.3d 377, 381 (3d Cir. 1993)).

Plaintiffs, in their Opposition, contend that the Prosecutor's Office never considered the validity of a potential civil lawsuit. Therefore, it is argued that the public interest requirement in Rumery has not been satisfied. However, as set forth in the sworn Affidavit of First Assistant Prosecutor Julia McClure, the public interest factor has been satisfied.  The sworn Affidavit of First Assistant Prosecutor McClure remains unrefuted by Plaintiffs.

Further, the facts are clear that Release/Hold Harmless Agreements were not a blanket requirement of the Middlesex County Prosecutor's Office for entry into PTI.  In fact, the dismissal of the civil case was suggested and recommended as a solution by Judge DeVesa, not the Prosecutor's Office.  The Middlesex County Prosecutor's Office had no policy requiring the execution of such a Release/Hold Harmless Agreement before this matter and did not prepare the subject Release/Hold Harmless Agreement.

The fact remains that both sides, Mr. Kandil and the State, benefited from this plea bargain.  Therefore, it is respectfully submitted that the Release/Hold Harmless Agreement must be enforced.

Based on the foregoing, it is respectfully requested that Defendants' Motions for Summary Judgment be granted and Plaintiffs' Amended Complaint be dismissed with Prejudice.

Respectfully submitted,

WILLIAM T. CONNELL

WTC:BCO
Enclosures

The Honorable Joseph A. Greenaway, Jr., U.S.D.J.     Page 10
RE:  Kandil v. Yurkovic et al.         February 1, 2010

```
cc:   The Honorable Madeline Cox Arleo, U.S.M.J.
      United States District Court
      Martin Luther King Federal Courthouse & Building
      50 Walnut Street
      Newark, New Jersey  07102

      Robert D. Kobin, Esq.
      Nusbaum Stein Goldstein Bronstein and Kron
      20 Commerce Boulevard
      Succasunna, New Jersey 07876

      Gary S. Spagnola, Esq.
      Golden Rothschild Spagnola Lundell Levitt and Boylan
      1011 Route 22 West, Suite 300, Box 6881
      Bridgewater, New Jersey  08807

      Michael John Stone, Esq.
      The Stone Law Group
      20 Glenview Drive
      Warren, New Jersey 07059

      Susan K. O'Connor, Esq.
      Hoagland Longo Moran Dunst and Doukas, Esqs.
      40 Paterson Street, P.O. Box 480
      New Brunswick, New Jersey  08903

      Lawrence Y. Bitterman, Esq.
      247 Livingston Avenue
      New Brunswick, New Jersey 08901
```