NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| BASSEM KANDIL and FLORA KANDIL, *et al*. | **Hon. Dennis M. Cavanaugh** |
| Plaintiffs, | **OPINION** |
| v. | Civil Action No. 06-CV-4701 |
| POLICE OFFICER GARY YURKOVIC, *et al*. |  |
| Defendants. |  |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Police Officer Gary Yurkovic, Police Officer Anthony Mark Abode, Police Officer William C. Oels, III, Sergeant William Oels, Jr., Police Director (improperly pled as "Police Chief") Edward T. Bobadilla, City of New Brunswick and City of New Brunswick Police Department (collectively, "Defendants") for summary judgment pursuant to Fed. R. Civ. P. 56. Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. After considering the submissions of all parties, and based upon the following, it is the conclusion of this Court that Defendants motion for summary judgment is **granted**.

I.   **BACKGROUND**

On October 1, 2004, Bassem Kandil ("Plaintiff" or "Kandil") was arrested by Police Officer Gary Yurkovic of the New Brunswick Police Department on charges of aggravated assault on a police officer, resisting arrest, disarming a police officer and disorderly conduct. A warrant complaint was prepared and served upon Plaintiff, charging Plaintiff with resisting arrest in violation

of N.J.S.A. 2C:29-2(a), aggravated assault on a police officer in violation of N.J.S.A. 2C:12-18 and disarming a police officer in violation of N.J.S.A. 2C:12-11.  Bail was set by the Honorable Gerald Gordon, J.M.C. at $150,000.00 without a ten percent (10%) option.  A summons complaint was issued, charging Plaintiff with a disorderly persons offense in violation of N.J.S.A. 2C:33-2.  Plaintiff was later indicted by the Middlesex County Grand Jury on one (1) count of disarming Officer Yurkovic, in violation of N.J.S.A. 2C:12-11, two (2) counts of aggravated assault on Officer Yurkovic and Officer Oels, in violation of 2C:12-1(b)(5) and two (2) counts of resisting arrest as to Officer Yurkovic and Officer Oels, in violation of N.J.S.A. 2C:29-2(a)(3). (Indictment No. 04-12-01694).

By way of letter dated December 17, 2004, Assistant Prosecutor Sheree V. Pitchford offered Plaintiff a plea to non-custodial probation, subject to any counseling recommendations on the charge of aggravated assault and a dismissal of the charge for disarming a police officer.  On December 30, 2004, Plaintiff filed a Notice of Tort Claim pursuant to the New Jersey Tort Claims Act. On January 25, 2005, Plaintiff was arraigned, and Assistant Prosecutor Pitchford renewed the plea offer which was rejected by Kandil.

On October 18, 2005, a status conference was conducted before the Honorable Frederick P. DeVesa, P.J.C. in Middlesex County, Superior Court of New Jersey.  Assistant Prosecutor Marcia Silva appeared on behalf of the State at this proceeding.  While on the record, Assistant Prosecutor Silva renewed the plea offer and foreclosed any possibility of admission to Pretrial Intervention program ("PTI") as Plaintiff had been charged with a second degree offense.  However, while off the record, a compromise arose that would require Kandil to relinquish any claims arising from a civil suit in exchange for admission to PTI.  Thereafter, Assistant Prosecutor Silva gave Kandil

2

permission to apply to PTI.  Prosecutorial consent was required because the indictment contained a criminal charge in the second degree.  Plaintiff's counsel informed Plaintiff that successful completion of PTI would result in the dismissal of pending criminal charges.  Plaintiff was also informed that admission to PTI may be expressly contingent upon a waiver of civil claims.

Plaintiff applied for admission to PTI on October 18, 2005.  On October 28, 2005, the Probation Department[1] denied Plaintiff's application for admission to PTI.  In denying the application, the Criminal Manager reasoned that "(1) Plaintiff's crime was assaultive or violent in nature, (2) the crime is such that the public need for prosecution outweighs the value of supervisory treatment and (3) Plaintiff's conduct, while seemingly alcohol induced, represented the potential for more severe consequences had circumstances differed or had [Plaintiff] gained physical possession of the weapon.  Admission into P.T.I. would deprecate the serious nature of the offense."  At the request of Assistant Prosecutor Silva, First Assistant Prosecutor Julia McClure approved an override of the program rejection on the condition that Plaintiff execute a document waiving the right to a civil suit and that Plaintiff attend Anger Management Classes.  By way of letter dated November 9, 2005, Assistant Prosecutor Silva informed Plaintiff that admission to PTI was contingent upon Plaintiff "execut[ing] a hold harmless agreement against all officers involved in this incident, the City of New Brunswick and the Middlesex County Prosecutor's Office[,]" in addition to standard PTI conditions and the requirement that Plaintiff attend Anger Management Classes.  Consistent with this letter, a PTI enrollment hearing was conducted before Judge DeVesa on November 9, 2005.

---

[1] Ultimately, PTI supervision of Plaintiff was transferred from the Middlesex County Probation Department to the Hunterdon County Probation Department because Plaintiff resides in Hunterdon County.

At that hearing, Judge DeVesa stated the following:

Okay. And I see here in the proposed order for the Court's signature that the defendant as a condition of Pretrial Intervention intends to execute some type of a whole [sic] harmless agreement against officers in the City of New Brunswick agreeing presumably not to bring any civil action against them as a result of his arrest and charge in connection with this case, is that correct?

Mr. Kobin responded, "Yes, your Honor."

Plaintiff's counsel offered to draft the document. The Court imposed a December 2, 2005 deadline for filing the executed agreement with the Probation Department. On November 9, 2005, Plaintiff was formally enrolled in PTI. Pursuant to the order of postponement, dated November 9, 2005 and signed by Judge DeVesa, Prosecutor Silva, Plaintiff's attorney, Mr. Kobin, and Kandil and, Plaintiff was required to "execute a hold harmless agreement against all officers involved, City of New Bruns. and MCPD." [sic]

On September 29, 2006, Plaintiff filed a complaint in the United States District Court for the District of New Jersey. Pursuant to the Amended Complaint, dated October 25, 2006, Plaintiff alleges the following claims: Count I: False Arrest/False Imprisonment; Count II: Malicious Prosecution; Count III: Intentional Infliction of Emotional Distress; Count IV: Malicious Abuse of Process; Count V: Tortious Interference with Economic Advantage; Count VI: Negligent Training and Supervision; Count VII: Civil Conspiracy; Count VIII: New Jersey Civil Rights Violations; Count IX: 42 U.S.C. § 1983 Violations; Count X: 42 U.S.C. § 1985 Violations; Count XI: Excessive Force; Count XII: Loss of Property; Count XIII: Theft of Property; and Count XIV: Loss of Consortium. The named Defendants are the same individuals that the Release/Hold Harmless Agreement was intended to waive claims against. On February 7, 2007, as a consequence of Plaintiff's failure to execute the

Release/Hold Harmless Agreement and an alleged violation of Judge DeVesa's order of postponement, the Hunterdon County Probation Department filed a Notice of Motion for Termination of Plaintiff's admission to PTI.

On March 20, 2007, Plaintiff executed the Release/Hold Harmless Agreement. That release states, "I release and give up any and all claims and rights which I may have against you."  Further, the release indicates, "I specifically release the following claims: Any and all claims for personal injuries and property damage arising out of an assault which occurred on or about October 1, 2004 in the City of New Brunswick . . . which claims are more particularly described as to the subject of a lawsuit in the United States District Court, District of New Jersey[.]"  That release is signed by Plaintiff and indicates that it is binding upon Plaintiff.

Thereafter, Plaintiff completed the PTI program and accordingly, the underlying criminal charges against Plaintiff were dismissed.

## II.   LEGAL STANDARD

"A court reviewing a summary judgment motion must evaluate the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." Gaston v. U.S. Postal Serv., 2009 U.S. App. LEXIS 5673 (3d Cir. 2009).  However, "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

"A party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim." Fed. R. Civ. P. 56(b).  "[T]he burden on the moving party may be discharged by "showing" -- that is, pointing out to the district court -- that

5

there is an absence of evidence to support the nonmoving party's case." <u>Celotex Corp. v. Cartrett</u>, 477 U.S. 317, 325 (1986).   "[R]egardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c)." <u>Celotex</u>, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).

> When a motion for summary judgment is properly made and supported, [by contrast,] an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986) (internal citations omitted).   Indeed, "unsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment." <u>See Schoch v. First Fid. Bancorp.</u>, 912 F.2d 654, 657 (3d Cir. 1990).   Rule 56(e) permits "a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" <u>Id</u>. (quoting <u>Lujan v. National Wildlife Fed'n.</u>, 497 U.S. 871, 889 (1990)).   "It is clear enough that unsworn statements of counsel in memoranda submitted to the court are even less effective in meeting the requirements of Rule 56(e) than are the unsupported allegations of the pleadings." <u>Schoch</u>, 912 F.2d at 657.

## III.   DISCUSSION

Defendants contend that the Release/Hold Harmless Agreement, like any other contract, is binding on Plaintiff, should be enforced and requires dismissal with prejudice of Plaintiff's Amended

Complaint.  Plaintiff asserts that "it is against public policy to compel an individual to give up his constitutional right to sue for redress in exchange for a particular result in a criminal action."

On the one hand, "a promise is unenforceable if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by enforcement of the agreement." Town of Newton v. Rumery, 480 U.S. 386, 392 (1987) (rejecting a per se rule against waiver of constitutional claims pursuant to a release-dismissal agreement).   On the other hand, where a release-dismissal agreement is voluntary, where there is no evidence of prosecutorial misconduct and where enforcement of the agreement will not offend relevant public interests, such agreement is enforceable.  Id. at 398.; compare Cain v. Darby Borough, 7 F.3d 377 (3d Cir. 1993)(blanket policy of requiring release of Section 1983 claims rendered the release unenforceable).  "Such a public policy, however, must be well-defined and dominant, and is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" Fields v. Thompson Printing Co., 363 F.3d 259, 268 (3d Cir. 2004) (citing W.R. Grace & Co. v. Local Union 759, 461 U.S. 757, 766 (1983)).

1.      Voluntary

"Relevant factors in evaluating whether a release is voluntary under *Rumery* may include the knowledge and experience of the defendant, whether the defendant was represented and whether the attorney drafted the agreement, whether the defendant is in custody, and whether the defendant had time to consider the agreement." Id. (citing Burke v. Johnson, 167 F.3d 276, 279-280 (6th Cir. 1999)). Other factors include whether Plaintiff expressed any unwillingness to sign the agreement and whether the agreement is clear on its face.   "[A] defendant must establish the voluntariness of the release-dismissal agreement by clear and convincing evidence." Williams v. Dellorco, 2007 U.S. Dist.

85721, *11 (D.N.J. Nov. 20, 2007) (citing <u>Livingstone</u>, 91 F.3d at 534).

2.      Prosecutorial Misconduct/Public Interest

"The prosecutorial misconduct and public interest factors are considered together, <u>Cain</u>, 7 F.3d at 380, and require that the facts known to the prosecutor at the time objectively support the proffered public interest to be served by the agreement, and that the proffered public interest be the *actual reason* for the agreement." <u>Id</u>. (citing <u>Livingstone v. North Belle Vernen Borough</u>, 91 F.3d 515, 527 (3d Cir. 1996)).     That is, "[t]he party seeking to enforce a release-dismissal agreement must demonstrate that: (1) objectively, 'the facts known to the prosecutor when the agreement was reached . . . sufficed to support the prosecutor's proffered public interest reason for concluding the agreement' and that the public interest reason is a legitimate one; and (2) subjectively, 'the public interest proffered by the prosecutor is the prosecutor's actual reason for seeking the release.'" <u>Williams</u>, 2007 U.S. Dist. 85721, at *11 (quoting <u>Davis v. Ort</u>, 42 F. Supp. 2d 465, 471 (D.N.J. 1999)).

Pursuant to Rule of Professional Conduct ("RPC") 3.4(g), "[a] lawyer shall not present, participate in presenting, or threaten to present criminal charges to obtain an improper advantage in a civil matter."  Relying on Advisory Opinion 661, dated May 18, 1992, interpreting <u>Newton v. Rumery</u>, 480 U.S. 386 (1987) (rejecting a per se bar against release-dismissal agreements), and Advisory Opinion 717, dated October 27, 2008, Plaintiff contends that New Jersey RPC 3.4(g) precludes the Release/Hold Harmless Agreement at issue.  The former interpretation opines that while a practice of waiving constitutional or civil claims in exchange for a plea is unethical, it is not illegal. The latter interpretation opines that "RPC 3.4(g) prohibits a prosecutor from conditioning entry of a plea or entry into pretrial intervention in a criminal, quasi-criminal, or motor vehicle matter on defendant's release from civil liability and agreement to hold harmless any person or entity such as

8

the police, the prosecutor or governmental entity.  The prohibition applies in all situations including when the defendant's release from liability and agreement to hold harmless is initially offered by defense counsel."

The instant matter is unique in that the condition precedent to admission into PTI is the subject of a dispositive order issued by the New Jersey Superior Court.[2]  As stated above, the postponement order provides that Plaintiff was required to "execute a hold harmless agreement against all officers involved, City of New Bruns. and MCPD." [sic] Pursuant to the Rooker-Feldman doctrine, it is an "elementary principle that a party's recourse for an adverse decision in state court is an appeal to the appropriate state appellate court, and ultimately to the Supreme Court under § 1257, not a separate action in federal court."  Parkview Assocs. Pshp. v. City of Leb., 225 F.3d 321, 324 (3d Cir. 2000) ("The Rooker-Feldman doctrine is based on the statutory foundation of 42 U.S.C. § 1257 and the well-settled understanding that the Supreme Court of the United States, and not the lower federal courts, has jurisdiction to review a state court decision.").

Therefore, to the extent that Plaintiff seeks to invalidate or override a provision contained in the underlying order of postponement, Plaintiff was required to file an appeal in accordance with applicable New Jersey State Court Rules.  See N.J. Ct. R. 3:28, 2:3-2; and 2:4-1; see State v. Bufu, 234 N.J. Super 331, 336 (N.J. Super. Ct. App. Div. 1989)(defendant granted leave to appeal pretrial intervention conditions).   Presumably, more than three years later, the time to appeal has expired.

---

[2]

Although First Assistant Prosecutor McClure testified, by way of deposition that Judge DeVesa suggested the Release/Hold Harmless Agreement in exchange for admission to PTI and Plaintiff does not dispute that this was the testimony of First Assistant Prosecutor McClure, Plaintiff neither concedes nor disputes the underlying assertion of fact. Facts submitted in the statement of material facts which remain uncontested by the opposing party are deemed admitted. See Hill v. Algor, 85 F. Supp. 2d 391, 408 n.26 (D.N.J. 2000).

Plaintiff is not permitted to institute a parallel proceeding in order to evade the New Jersey State Court's appellate procedure and invoke review of a ruling that is not otherwise within the purview of this Court's jurisdiction. Indeed, Plaintiff may have alternative avenues of redress, however, this Court is not the appropriate forum. As this Court is not vested with the authority to sit in review of appeals from decisions of the New Jersey Superior Court, this matter is dismissed in its entirety.

In the alternative, the Court is cognizant of the fact that after Plaintiff received the benefit of the bargain, Plaintiff now seeks to nullify that portion of the agreement that is less than favorable to Plaintiff's present interests. Notably, had Plaintiff raised objection in the appropriate forum, Plaintiff may have incurred an adverse consequence with respect to Plaintiff's admission and continued participation in PTI. Further, the fact that the same attorney who represented Plaintiff, in Plaintiff's capacity as Defendant at the State level in connection with the PTI enrollment hearing, who signed and consented to the terms of the underlying postponement order at issue, who instituted the civil suit in this Court on behalf of Plaintiff and who volunteered to draft the Release/Hold Harmless Agreement executed by Plaintiff has not escaped this Court's attention.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **granted**. An appropriate Order accompanies this Opinion.

 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Dated:        April  8  ,  2010
Original:     Clerk
cc:           All Counsel of Record
              Hon. Mark Falk, U.S.M.J.
              File